IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL BOCHENSKI,

    *Plaintiff*,

    v.

M&T BANK,

    *Defendant*.

Civil Action No. ELH-14-1031

**MEMORANDUM**

Plaintiff Michael Bochenski, who is self-represented, filed suit against defendant M&T Bank ("M&T" or "Bank"), supported by twenty exhibits. *See* ECF 2 ("Complaint").[1]  In a twenty-seven page, single-spaced Complaint, he alleges that the Bank committed "fraud, theft and/or conspiracy to commit fraud" in connection with a mortgage loan ("Loan") that plaintiff obtained from another lender on September 30, 1987. *See id.* ¶ 1; ECF 2-4 at 1, Ex. D, Purchase Money Deed of Trust dated 9/30/87 ("Deed of Trust").  The Loan, in the sum of $65,000, was used to finance plaintiff's purchase of residential real property (the "Property") located in Annapolis, Maryland, and is secured by the Property. *See* ECF 2 ¶ 1; ECF 2-4 at 1, Deed of Trust.

M&T had no involvement with plaintiff's Loan until November 1, 2011, when the servicing of the Loan was reassigned from Bogman, Inc.[2] ("Bogman") to M&T. *See* ECF 2

---

[1] Plaintiff filed suit against M&T in the Circuit Court for Anne Arundel County. *See* ECF 2.  M&T timely removed the case to this Court on the basis of diversity, pursuant to 28 U.S.C. § 1332, § 1441, and § 1446. *See* ECF 1.  In particular, plaintiff is a citizen of Maryland and defendant is a New York corporation with its principal place of business in Buffalo, New York. *Id.* at 2–3.

[2] Plaintiff identifies his prior mortgage servicer as "Bogman Inc." *See*, *e.g.*, ECF 2 ¶ 23. I have used the spelling as it appears in various exhibits.

¶¶ 36, 38; ECF 2-3 at 1, Ex. C, letter dated 9/6/12 from Nancy Terranova, M&T Operations Manager, to Bochenski ("Terranova Letter").  Plaintiff claims that on January 9, 2012, he was notified by the Bank "that they now held the mortgage."  ECF 2 ¶ 36.  Thereafter, a series of disputes arose between plaintiff and M&T, as to several matters, including alleged overpayments by plaintiff in connection with his private mortgage insurance policy, largely made during the period when the Bank had no involvement in the Loan.

In his Complaint, plaintiff seeks compensatory damages of $194,576.04 and punitive damages in an unspecified amount.  *Id.* ¶ 72.  In a later submission, ECF 19, he seeks punitive damages of $778,404.16, to be paid "in gold or silver at current market rates or by certified check or cashier's check …." *Id.* at 29–30.[3]

M&T has filed a "Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, Motion for a More Definite Statement" (ECF 9, "Motion").  In response, plaintiff filed a "Motion to return for this Federal District Court's, court of record AND to return case to Maryland Circuit Court for Anne Arundel County in Annapolis Maryland as case number 02-C-14-185059" (ECF 10, "Motion to Return").  Plaintiff also filed a "Writ of Error and Motion to Return Court Case to Original Jurisdiction" (ECF 14, "Writ of Error"), and "Motion to Deny Defendant's Opposition and/or Request for a Hearing to Deny the Defendant's Deny Opposition" (ECF 16, "Motion to Deny").  Defendant filed oppositions to the Motion to Return and to the Writ of Error.  *See* ECF 11; ECF 15.  By Memorandum (ECF 17) and Order (ECF 18) entered July 21, 2014, I denied plaintiff's Motion to Return, Writ of Error, and Motion to Deny.  And, plaintiff was directed to file his opposition to defendant's Motion by August 4, 2014.  *See* ECF 18 ¶ 5.

---

[3] Plaintiff also requests that M & T "pay for an armored truck and people to move gold or silver …."  ECF 19 at 30.  And, plaintiff asks the court to preclude payment of a judgment "in coins," which would amount to "foul play by the defendant …."  *Id.*

On August 1, 2014, plaintiff filed two additional motions: a "Motion to Strike Defendants [sic] Motion to Dismiss and Amend Complaint to Claim and Hearing for Judgment and Stay Order" (ECF 19, "First Motion to Strike"), supported by five exhibits, and a "Motion to Strike Defendants [sic] Motion to Dismiss and Amend Complaint to Claim and Hearing for Judgment and Stay Order or Motion to Dismiss in Circuit Court" (ECF 20, "Second Motion to Strike"), supported by an exhibit.[4]   Although plaintiff styles these filings as motions,[5] I have construed these submissions as responses to defendant's Motion.   M&T filed a Reply (ECF 21) on August 18, 2014.[6]

## I.   Factual Background[7]

On September 30, 1987, plaintiff borrowed $65,000 to finance the purchase of a home on Tyler Avenue in Annapolis, payment for which was secured by a Deed of Trust dated September

---

[4] The pages of plaintiff's various submissions are unnumbered.   M&T also notes that plaintiff's filings do not comply with Local Rule 102(2)(b), which requires court documents to be double-spaced, except for quotations and footnotes.   ECF 21 at 3.   To illustrate, plaintiff's Complaint consists of 27 unnumbered pages of single-spaced text.   *See* ECF 2.   Similarly, the First Motion to Strike consists of 33 single-spaced pages of text, and his Second Motion to Strike consists of seven single-spaced pages.   *See generally* ECF 19; ECF 20.

[5] Plaintiff's First Motion to Strike (ECF 19) includes a request to amend his Complaint with additional facts, as well as requests for this Court to Strike defendant's Motion (ECF 9); grant plaintiff a hearing; stay a foreclosure proceeding in the Circuit Court for Anne Arundel County, Case No. 02-C14188204; and reconsider the previously denied Motion to Return (ECF 10), Writ of Error (ECF 14), and Motion to Deny (ECF 16).   *See* ECF 19 at 1–2.   Plaintiff's Second Motion to Strike (ECF 20) duplicates the requests in the First Motion to Strike, with the additional request that this Court "[d]ismiss Intent to Foreclose action in Circuit Court in for [sic] Anne Arundel County Maryland."   *Id.* at 1.

[6] On September 2, 2014, plaintiff filed a separate action in this Court against "Laura Curry and all attorneys at McCabe, Weisberg & Conway LLC"; "Brian Moffet and all attorneys and Gordon Feinblatt LCC"; and "M&T Bank."   He alleged trespass, forgery, and fraud.   *See Bochenski v. Curry, et al.*, No. WMN-14-2780 (D. Md.).   Judge Nickerson promptly dismissed the case, *sua sponte*, for failure to satisfy Fed. R. Civ. P. 8(a).   *See id.*, ECF 2.

[7] Unless otherwise indicated, the factual background is drawn from the Complaint, which I have endeavored to decipher.

30, 1987.  ECF 2 ¶ 1; *see also* ECF 2-4 at 1, Deed of Trust.  The lenders appear to have been Weaver Brothers, Inc. and the Community Development Administration ("CDA"), a division of the Maryland Department of Housing and Community Development ("MDHCD" or "Department") (collectively, the "Lender").  *See* ECF 2-4 at 1, Deed of Trust.[8]  The Maryland Housing Fund issued a "COMMITMENT/CERTIFICATE FOR MORTGAGE INSURANCE" to the Lender.  *See* ECF 2 ¶ 63; ECF 2-1, Ex. A, Maryland Housing Fund Commitment/Certificate for Mortgage Insurance ("PMI Certificate").  As noted, on November 1, 2011, the servicing rights for plaintiff's mortgage were transferred from Bogman to M&T.  *See* ECF 2 ¶ 38; *see also* ECF 2-3 at 1, Terranova Letter.

The remaining facts are difficult to glean from the rambling Complaint.  But, it appears that plaintiff takes issue with the manner in which M&T serviced his Loan.  Most of plaintiff's allegations pertain to the following: (A) plaintiff's payments for private mortgage insurance; (B) M&T's alleged failure to provide plaintiff with a "proper accounting" of his mortgage, and related communications with M&T Senior Counsel, Paul Kucinski; (C) M&T employees' alleged errors with respect to plaintiff's Loan; (D) M&T employees' alleged harassment of plaintiff; and (E) "theft" by M&T.

As best as I can determine, the mortgage has been satisfied.  In any event, this case does *not* involve a foreclosure on the Property by the Bank.

---

[8] In the parties' submissions, reference is made to CDA as having "arranged" the Loan. *See*, *e.g.*, Terranova Letter, ECF 2-3 at 1.  The Deed of Trust, ECF 2-4, refers to CDA as a Lender.  The discrepancy is not material.

## A. Private Mortgage Insurance

Plaintiff's Deed of Trust contains two provisions that, read together, appear to have required plaintiff to purchase private mortgage insurance ("PMI").[9]  First, the Deed of Trust provides, ECF 2-4 ¶ 7 (emphasis added):

> 7. <u>Mortgage Insurance</u>: Until all sums due under the Note and secured hereby are fully paid and satisfied (unless otherwise permitted by Lender and CDA), *Borrower shall keep and maintain in effect a policy of mortgage insurance*, in an amount at least equal to the outstanding indebtedness … issued by … the Maryland Housing Fund.

Second, the Deed of Trust states that monthly payments of the PMI are required on the same date monthly mortgages payments are due.  *See* ECF 2-4 ¶ 2.

In September 1987, plaintiff obtained a PMI policy from the Maryland Housing Fund.  *See* ECF 2 ¶ 63; ECF 2-1, PMI Certificate.  Plaintiff made PMI premium payments of $13 per month for approximately 25 years, from 1987 until about early 2012.  ECF 2 ¶ 30; *see also* ECF 2-3 at 1, Terranova Letter.  Relying on the Homeowners Protection Act, plaintiff maintains here that he was never obligated to obtain PMI.  *See* ECF 2 ¶¶ 13, 30, 63.[10]

---

[9] "When a mortgage loan is for more than 80% of a home's value, borrowers typically are required to obtain private mortgage insurance ('PMI') directly through a private mortgage insurance company." *Dwoskin v. Bank of Am., N.A.*, No. CCB-11-1109, 2013 WL 427362, at *1 (D. Md. Jan. 31, 2013) (internal citations to the record omitted).  "If borrowers purchase PMI, they generally do so at closing and independently pay insurance premiums to the mortgage insurance company." *Id.* (internal citations to the record omitted).

[10] The Homeowners Protection Act referenced by plaintiff in the Bancone Letter, ECF 2-5 at 1, requires a loan servicer to terminate a borrower's PMI for "residential mortgage transactions" on the date that the principal balance of the mortgage is first scheduled to reach 78 percent of the original value of the secured property, if the borrower is current.  *See* 12 U.S.C. §§ 4901(18), 4902(b).  However, the Homeowners Protection Act primarily applies to "residential mortgage transaction[s]" consummated on or after July 29, 1999.  *Id.* § 4901(15).  As indicated, plaintiff obtained his loan in September 1987.

In a letter from plaintiff dated March 13, 1999, to "Bancone Mort Corp," which appears to have been a previous servicer of plaintiff's mortgage, plaintiff stated: "PMI insurance is not for me it is insurance for you.   Weaver Bro lied to me.   This Homeowners Protection Act information you sent does not require me to have it."   *See* ECF 2-5 at 1, Ex. E ("Bancone Letter").

Plaintiff apparently raised the issue of PMI with the Bank.   Sometime after November 2011, M&T employee Claudette Satchell[11] contacted the MDHCD to ask whether Mr. Bochenski qualified for cancellation of his PMI insurance obligation, given how much of his Loan principal had been paid.   *See* ECF 2 ¶ 23; *see also* ECF 2-3 at 1, Terranova Letter.   Thereafter, the MDHCD agreed to cancel Mr. Bochenski's remaining PMI payment obligations.   *See* ECF 2 ¶ 23; *see also* ECF 2-3 at 1, Terranova Letter.   The Department also agreed to refund plaintiff for the PMI premium payments that he had made from 2002 through 2011.   *See* ECF 2-3 at 1, Terranova Letter; ECF ¶¶ 22-24.   As a result, the State of Maryland Treasury Office issued two checks to plaintiff, totaling $1560.   ECF 2 ¶ 27; *see also* ECF 2-7 at 1–2, Ex. G ("PMI Refund Checks").   M&T Bank repeatedly attempted to explain to Mr. Bochenski the actions that occurred regarding his PMI policy.

For example, in a letter to plaintiff dated June 20, 2012, Aimee Carpenter, Mortgage Customer Support at M&T, responded to a letter from plaintiff and stated, ECF 2-6 at 1, Ex. F ("Carpenter Letter"):

> Upon thorough review of your account, it has been determined that the PMI policy should have been canceled in 2002 by the previous servicer. However, it was not removed until March 2012 by M&T Bank. A refund in the amount of $1,135.86 was mailed directly to you from the Maryland Department of Housing

---

[11] In his Complaint, plaintiff refers to Ms. Satchell as "Claudette Satchell," ECF 2 ¶ 46; "Claudett Satchell," *id.* ¶ 23; and "Claudy Satchell." *Id.* ¶ 18.

for premiums paid from 2002 through 2010.   According to the Homeowners Protection Act of 1999, any loan closed prior to 7/29/99 would be removed at mid-point.  Since your loan closed on 9/30/1987, your midpoint [sic] was reached in 9/2002.   Based on this act, you were advised that the refund would be $1,560.00.  An additional check will be mailed by the Maryland Department of Housing in the amount of $424.14 for this difference under separate cover.  This will cover the total amount of premiums paid from 2002 through 2011 ($156.00 times 10 years).[12]

Similarly, in a letter dated July 25, 2012, discussed further, *infra*, M&T's Senior Counsel,

Paul W. Kucinski, Esq., gave a similar account to Tyler King, Esq., then counsel for Mr.

Bochenski, with respect to M&T's communications with the Department.  *See* ECF 2-17, Ex. Q

("First Kucinski Letter").  Kucinski said, in part, *id.* at 2:

> In response to the many correspondences and branch visits by Mr. Bochenski, his mortgage account was reviewed further.  During this review, M&T determined that mortgage insurance on Mr. Bochenski's account was no longer required and was terminated.  As a result, a second escrow analysis statement dated February 27, 2012 was prepared and issued to Mr. Bochenski to reflect the removal of the mortgage insurance.
>
> ***
>
> It was also determined through our research that the private mortgage insurance policy should have been canceled by Bogman, Inc. in 2002.  Two refund checks totaling $1,560.00 were sent to Mr. Bochenski by the Maryland Community Development Agency to reimburse Mr. Bochenski for the premiums paid from 2002 through 2011 ($156.00 times 10 years).

And, in a letter to Mr. Bochenski dated September 6, 2012, ECF 2-3, M&T Operations

Manager Nancy Terranova addressed the cancellation of Mr. Bochenski's PMI policy.  She said,

in part, *id.* at 1, Terranova Letter:

> As you will recall, you obtained mortgage financing on September 30, 1987 arranged through the Community Development Association, a division of the Maryland DHCD.  At the time your mortgage was originated, it was disclosed to you that you were required to maintain private mortgage insurance. (Please see the enclosed documents.)  On November 1, 2011, the servicing of your mortgage

---

[12] The dates of 2010 and 2011 are used in the exhibits.  But, it appears that the refunds for the excess PMI payments covered 2002 through 2010, not 2011.

loan was transferred from Bogman, Inc. to M&T.  M&T is the current servicer of
your loan.

As is often the case when M&T originates a mortgage loan or acquires servicing
rights, we review mortgage accounts to make sure that the accounts are properly
set up.  In reviewing your mortgage account, we noticed that private mortgage
insurance was still in place.  Following an analysis of your mortgage account, we
determined that you had paid down the principal balance of your mortgage loan
significantly and that your private mortgage insurance may be qualified for
cancellation.  As a result, we contacted MD DHCD and advised the agency of the
situation.  Although the Homeowners Protection Act of 1998, which addressed
private mortgage insurance requirements for those mortgage loans originated on
or after July 29, 1999 did not affect your mortgage loan, MD DHCD agreed to
cancel the Insurance and refund to you the premiums paid from 2002 through
2011 as a courtesy.  Your annual premium was $1560.00.  Two refund checks
totaling $1,560.00 were sent to you from MD DHCD.

In addition, Terranova advised plaintiff that late charges for his payments for May, June,

and July of 2012, totaling $60.81, were waived by the Bank and "applied to the principal

balance," as "a customer service accommodation …."  ECF 2-3 at 2, Terranova Letter.  She also

indicated that plaintiff's "Loan History" was enclosed with her letter.  *Id.*

In a letter from Kucinski to plaintiff dated February 28, 2013, Kucinski recounted his

previous conversations with plaintiff, and expressed his view that plaintiff was responsible for

making PMI payments while the policy was in effect.  ECF 2-2 at 1-2, Ex. B ("Second Kucinski

Letter").  In the Second Kucinski Letter, Kucinski said: "On February 21st I called you at the

agreed upon time to discuss my findings.  I explained to you that I disagreed with your position

that you were not responsible for the monthly cost of mortgage insurance while it was in effect."

*Id.* at 1.  Kucinski also stated, *id.* at 2:

When the servicing of your mortgage loan transferred from Bogman, Inc. to
M&T, a review of your account was performed and it was determined that
mortgage insurance was no longer required.  In fact, it was M&T that discovered
you had paid too much in mortgage insurance premiums and it was M&T that
contacted the MDHCD to facilitate a refund of excess premiums paid by you.

In the Complaint, plaintiff takes issue with the manner in which M&T managed his PMI insurance obligations.  In his view, any suggestion by M&T that he was obligated to pay his PMI or that he only received a refund as a "courtesy" is fraudulent, and requires compensation to him.  *See*, *e.g.*, ECF 2 ¶ 12.

Further, plaintiff alleges that, in order to procure the refund of plaintiff's PMI payments, M&T employees engaged in "secret communications and 'negotiations'" with the Department, without his consent, and failed to disclose these negotiations to him.   ECF 2 ¶ 66; *id.*, Prayer ¶ 16.[13]  According to plaintiff, the purpose of these negotiations was "to unlawfully take or reduce the Plaintiff's Funds …." *Id.* ¶ 66.  In plaintiff's view, these negotiations, along with M&T's failure to disclose its communications with the Department, amount to "fraud against the plaintiff and/or the MD Treasury." *Id.* ¶ 23; *see also*, *e.g.*, *id.* ¶ 65 (alleging that "fraud may be committed against Maryland DHCD that caused the Maryland Dept. of the Treasury [to] write two checks mentioned [in] paragraph 27 in this compliant [sic]….").

Moreover, plaintiff claims that the Bank must apply the PMI to the Loan principal to reduce the balance of the Loan.  ECF 2 ¶¶ 13, 31, 32.  According to plaintiff, he overpaid $17,204.92 (with interest) and M&T owes an equal sum "as a punitive remedy for this fraud …." *Id.* ¶ 32.

 Plaintiff also disputes that M&T reviewed his account prior to making a determination of his PMI insurance obligations.  *See id.* ¶ 14.  In plaintiff's view, M&T could not have reviewed his account because M&T "cannot show a monthly payment history of interest, principal and

---

[13] Plaintiff's "Prayer," *i.e.*, prayers for relief, begin on what would be page 23 of the Complaint if the pages were numbered.  The prayers consist of ¶¶ 1 to 21.  To differentiate these duplicate paragraph numbers from the earlier paragraph numbers in the Complaint, I will include the word "Prayer," where appropriate.

balance by date from September 1987 to current date. . . ."   ECF 2 ¶ 14;  *see also id.* ¶ 12

(characterizing statements in Ms. Terranova's letter as "false claims" and an act of "fraud against

the plaintiff").    Moreover, plaintiff complains that the "Loan History" enclosed with the

Terranova Letter was "incomplete" because "[t]he years from 1987 through 1997 and year 2012

to current date are missing."  *Id.* ¶ 14; *see also* ECF 2-12, Ex. L ("Loan History").

### B.   Request for Proper Accounting; Communications with Mr. Kucinski

Plaintiff alleges that M&T failed, despite repeated requests, to provide him with a

"proper accounting" of the balance due on his Loan.  *See*, *e.g.*, ECF 2 ¶ 16 ("M&T … must

create proper accounting of funds to [plaintiff's] account … in accordance [with] the Deed of

Trust ….."); *id*. ¶ 46 ("M&T has never sent a correct escrow statement or an accounting for the

account 004000093 during their time as the MSP."); *id.* ¶ 51 (All M&T employees in all

communications were demanded [to] generate proper accounting for account 040000093.…

This statement and information has not been provided, as of this date."); *id.* ¶ 59 ("All parties

have been demanded to get a full accounting of account 004000093 and these request [sic] are

still being denied and cause the plaintiff continuing harm.").   According to plaintiff, "a full

accounting will show the [mortgage] loan is paid off."   *Id.* ¶ 60; *see also id*. ¶ 33 (stating that

"this loan … has been paid off on or about March 2012 ….").

To support the contention that plaintiff's mortgage has been satisfied, plaintiff advances

two claims.   *See* ECF 2 ¶¶ 21, 29–32.   Relying on M&T's purported mismanagement of

plaintiff's excess PMI payments, plaintiff asserts: "***Michael Bochenski the plaintiff did not ask***

***for a refund***" of the excess PMI payments.  *Id.* ¶ 24 (emphasis supplied by plaintiff).   Rather,

plaintiff contends that he "demanded excess funds to be applied to the account reducing the

principal at date of receipt of each excess paid." ECF 2 ¶ 24. Quoting the Deed of Trust, plaintiff alleges, *id.* (boldface and underling added by plaintiff):

> **"If the amount of the funds held by the lender, together with the future monthly installments of Funds payable before the dates of the Assessments, as they fall due, such excess shall be, at the <u>Borrower's option</u>, either repaid to Borrower on monthly installments of Funds or <u>towards the outstanding principal and interest</u>."**

Plaintiff seems to suggest that the Deed of Trust provides that, at the Borrower's election, excess payments are either returned to the Borrower or applied to the outstanding balance on the Loan. Accordingly, plaintiff contends that instead of a refund to plaintiff of $1,560 for alleged PMI overpayments, all of plaintiff's prior PMI payments should have been applied to plaintiff's outstanding Loan balance. ECF 2 ¶¶ 24, 29, 31. Factoring in an interest rate of 8.65% to the premium payments, a rate that allegedly governs the Deed of Trust, *id.* ¶ 30, plaintiff calculates the "accumulated amount" of excess PMI payments to be $17,204.92. *Id.* ¶ 32. In plaintiff's view, had this amount been applied to the principal of his Loan, as he directed, the balance would have been "paid in full" "[o]n or around April 2013 …." *Id.*; *see also* ECF 2-13 at 7, Ex. M, Undated Spreadsheet (purporting to show that the retroactive application of plaintiff's PMI payments would result in his mortgage being paid off on or around March 2013). Plaintiff also claims the Loan was paid off "on or about March 2012." *Id.* ¶ 33.

In the alternative, plaintiff contends that his mortgage was satisfied via an accord and satisfaction of his outstanding mortgage debt. To this end, plaintiff recounts that on May 2, 2012, M&T called to inform him that he needed to pay $7.42 to his mortgage escrow account. ECF 2 ¶ 21. Plaintiff contends that the next day, May 3, 2012, he wrote a check to M&T for $7.42. *Id.* That check, ECF 2-7 at 3, is dated May 3, 2012, and was drawn on an account of Canvas Wizard, Inc., payable to M&T Bank ("Check 4895"). In other words, Check 4895 was

not drawn on a personal account of Mr. Bochenski.  Plaintiff states in his Complaint: "[I]t is known and not in dispute or ever has been, to date, that Michael Bochenski is Canvas Wizard, Canvas Wizard Inc and Canvas Wizard LLC since March 1st 1988 in his trade and to all parties in this case …."  ECF 2 ¶ 2.  But, the precise nature of plaintiff's relationship to Canvas Wizard, Inc., or the business of Canvas Wizard, Inc., is unclear from the Complaint.  Nor does plaintiff explain how the Bank would have known that "Michael Bochenski is Canvas Wizard," ECF 2 ¶ 2, or why Bochenski was able to use corporate funds to pay personal obligations.

On the memo line on the front of Check 4895, plaintiff wrote: "FULL PAYOFF OF BALANCE."  ECF 2-7 at 3, Check 4895.  On the back, the check included a typed message, *id.* (emphasis added):

> By cashing this check, M&T Bank agrees, to payoff mortgage 0040000093. …  This instrument is an invoice for mistakes made by M&T Bank, as agreed to by M&T Bank, and supercedes [sic] any contract before check 4857, from this same account, on reverse of this instrument that M&T Bank cashed.

Plaintiff suggests that because M&T cashed the check, his mortgage obligations were terminated.  *See* ECF 2 ¶ 21.  Therefore, in plaintiff's view, M&T's continued demand for mortgage payments constituted theft, *id.*, Prayer ¶ 15, and "continued harassment."  *Id.* ¶¶ 21, 60.

Bochenski asserts that, notwithstanding his satisfaction of his mortgage, on or about July 10, 2012, "M&T contacted plaintiff and stated that they had 'Intent to Foreclose'" upon his house.  *Id.* ¶ 60.  Plaintiff claims that he responded "in a panic," asked how much he owed, and insisted that a "full accounting will show that the loan is paid off …."  *Id.*  On July 11, 2012, plaintiff claims that M&T told him that he owed $1,484.50.  ECF 2 ¶ 60.  Plaintiff also complains that the next day, July 12, 2012, M&T increased the amount he owed by $1.44 to $1,485.94.  *Id.*

It is unclear whether plaintiff eventually made the outstanding payment of $1,485.94, as requested by M&T.  But, on July 11, 2012, plaintiff's attorney at the time, Tyler King, wrote a letter to Kucinski, requesting a "full accounting" of plaintiff's mortgage account.  ECF 2 ¶ 61; ECF 2-16, Ex. P ("King Letter").  King stated that "M&T demanded that Mr. Bochenski make a payment for an amount which he had never been billed."  ECF 2-16 at 1.  King also asserted: "M&T has continually ignored Mr. Bochenski's requests for information on the balance and breakdown of the account."  ECF 2-16 at 2.  King also said: "M&T has acknowledged the errors and has agreed to pay Mr. Bochenski for his time and effort spent resolving M&T's errors."  *Id.*[14]

On July 25, 2012, Kucinski responded to King's letter of July 12, 2012.  *See* ECF 2-17, First Kucinski Letter.  Mr. Kucinski maintained that M&T had sent plaintiff a copy of his escrow statement on multiple occasions.  *Id.*  "On December 22, 2011," Kucinski wrote, "an escrow statement was mailed to Mr. Bochenski to the same address that previous statements and correspondence have been sent with no items being returned by the Postal Service."  *Id.* at 1.  In addition, Kucinski stated that escrow statements had also been mailed to plaintiff in February 2012 and March 2012, *id.* at 2, and he emphasized that "all three escrow statements … were mailed to the above property address that is listed on our system of record."  *Id.*  And, Kucinski "enclosed a copy of Mr. Bochenski's payment history, amortization schedule … payoff statement and escrow analysis previously sent to him."  ECF 2-17 at 2, First Kucinski Letter.  As indicated, Kucinski also wrote a letter to plaintiff dated February 28, 2013, concerning his PMI policy.  ECF 2-2 at 1–2, Second Kucinski Letter.

---

[14] In support of King's assertion that M&T "has agreed to pay Mr. Bochenski for his time and effort" spent resolving M&T's alleged errors, King referred to "attached Exhibits B and C." ECF 2-16 at 2, King Letter.  Although plaintiff attached the King Letter to his Complaint as Exhibit Q, he did not include the exhibits referenced in the King Letter.

Plaintiff characterizes several statements in the First and Second Kucinski Letters as "actionable fraud."  ECF 2 ¶¶ 62–64.  He explains, *id.* ¶¶ 62–64 (boldface added):

62. In the letter dated July 25, 2012 (Exhibit Q) from M&T's Paul Kucinski, PRC (unknown acronym) stated his **first *actionable fraud*** in paragraph 2 as listed below and M&T confirms they did not mail escrow statement on December 22, 2011.  M&T does not even have an account number until February 2012. (note 2)

63. Mr. Kucinski committed **actionable fraud a 2nd time** in paragraph three that the plaintiff was informed his payment was different.  The plaintiff had Harry Higgins contact M&T Mortgage Division and no payment change was made on that January 10th phone call between Harry Higgins and M&T Mortgage Division.  The **3rd actionable fraud** made by Mr. Kucinski is that the plaintiff terminated the call before resolution (as stated in letter by Kucinski, Plaintiff Bochenski "hung up").  The plaintiff sat in Mr. Higgins office and he used the office phone of Mr. Higgins and Plaintiff Bochenski did not hang up on anyone during this speaker conference call.  Mr. Kucinski [sic] **4th actionable fraud** is that a November 7, 2011 from the plaintiff's Canvas Wizard checking account for $699.00 … .  It is actionable fraud in this letter from Paul Kucinski, dated July 25, 2012 (Exhibit Q) that a November 7th 2012 payment was received by M&T Bank that was mailed to Bogman Inc.  M&T has committed actionable fraud for cashing this (endorsing this instrument) transacting [sic] to transfer funds that was not made out to M&T Bank.  The November 7th 2012 Canvas Wizard check that Mr. Kucinski has stated was received is actionable fraud.  The **5th Actionable fraud** is that M&T had issued a onetime courtesy.  That is impossible they had not even taken the loan known my [sic] M&T as 004000093 until November 1, 2011 as stated in exhibit C.  Mr. Kucinski [sic] **6th actionable fraud** is that M&T determined that PMI was not [sic] longer required.  That an actionable fraud was committed by M&T employees since PMI was never required by the plaintiff once the Maryland Housing Fund Director signed the Certificate/Commitment this date "9/22/87" (September 22nd, 1987) on Exhibit A.  It is the decree by the plaintiff that this set of actionable fraud shall require remedy of $5000.00 …

64. Mr. Kucinski has committed **actionable fraud** by stating that by M&T [sic] own research in paragraph 6 in his July 25, 2012 (exhibit Q) letter and in his letter dated February 28, 2013 (Exhibit B) paragraph 3 that he "disagreed with my position".  It is not in his power or authority to agree or disagree and no person from M&T bank has the right to make such determinations … In [a] letter dated,

February 28th 2012 Mr. Kucinski letter is well aware that Michael Bochenski the plaintiff is and has demanded the full amount and commits actionable fraud by stating "refund of $14, 000.00" … in paragraph 2 of the exhibit B.  (As mentioned above in paragraph 24 of this complaint) has attempted to conceal M&T fraud and is further evidence of conspiracy to commit fraud and this actionable fraud and has caused the plaintiff excessive financial harm requires [sic] remedy that shall be $5000.00 … and is the wish of this court of record.  (Exhibits Q, B) (Note 2)

In addition to the above allegations, plaintiff complains that, on or about March 2013, he and Mr. Higgins "spent at least an hour looking for Mr. Kucinski [sic] direct phone number …." ECF 2 ¶ 10.  Further, plaintiff states, *id.* (emphasis added):

The phone number on Mr. Kucinski [sic] letter head has no extension and no operator can find him at M&T bank on his letter dated February 28th 2013 as witnessed by the plaintiff during Mr. Higgins [sic] attempts to contact him.  This date is well after the hiring of Michael Bochenski's attorney and is an unlawful action of an attorney in the state of Maryland or the United States.

According to plaintiff, this incident, along with statements in the First and Second Kucinski Letters, constitute "fraud" and "breach of ethical conduct by Mr. Kucinski" that entitles plaintiff to $5,000.00 in damages.  *See id.*, Prayer ¶ 4; *id.* ¶ 10.

## C.  Other Alleged Errors by M&T

In his Complaint, plaintiff chronicles a series of other alleged "errors" committed by M&T employees in servicing his Loan.  *See*, *e.g.*, ECF 2 ¶¶ 4, 7, 12, 16, 24, 27.  For example, plaintiff recounts an incident that pertains to an alleged improper transfer of funds by M&T. Plaintiff alleges, *id.*:

67. On or about November 18th 2011, M&T Received [sic] a check from Michael Bochenski on a Bank of America account was accepted by M&T [sic].  These funds were properly transferred and made available for 2 weeks after date of deposit at M&T Bank.  On or about December 5th 2011 M&T Bank transfer [sic] the Funds to Bank of America without permission or authorization by Michael Bochenski for unknown reasons to an unknown account. (Exhibit J) Baltimore Gas and Electric (aka BGE received a check based on this deposit from an M&T account.  M&T bounced and or refused funds to BGE declaring Michael Bochenski had insufficient funds or some other reason.  Michael Bochenski was

forced to pay BGE at a cash transfer location in the Safeway Grocery store located on Forest Drive in Annapolis, Maryland for one year. …

Mr. Bochenski complains that these 12 payments "cost Michael Bochenski an additional 12 hours of time plus travel time."  ECF 2 ¶ 67.  He asserts: "Remedy for this error and or fraud shall be $1,920.00 …."  *Id.*

In addition, Mr. Bochenski complains about an incident regarding duplicate payments of his mortgage.  *See* ECF 2 ¶¶ 36–42.  On January 9, 2012, plaintiff states that he received a call from M&T, informing him that M&T "now held the mortgage."  *Id.* ¶ 36.  According to Mr. Kucinski, the purpose of this call was to "remind[] Mr. Bochenski that his monthly payment was due on January 1, 2012."  ECF 2-17 at 1, First Kucinski Letter.  Plaintiff maintains, however, that his payments are "not late until the 16th of each month and are without penalty to that date."  ECF 2 ¶ 1.  Moreover, he claims that the Deed of Trust "reflects this 15 day grace period."  *Id.*

In any event, on January 10, 2012, plaintiff went to his local M&T branch, at 2027 Somerville Road in Annapolis, "to find out if they actually held the account."  *Id.* ¶ 36.  According to plaintiff, "this information was confirmed."  *Id.* ¶ 36.  During this visit, plaintiff spoke with "M&T bank and agent Harry Higgins V.P.," who initiated a conference call with the "M&T mortgage division" to determine the status of plaintiff's "Annual Escrow Report."  *Id.* ¶ 36.  According to plaintiff, the M&T mortgage division stated that it had not yet mailed the escrow report.  ECF 2 ¶ 36.

On February 8, 2012, M&T called plaintiff to inform him that it had not yet received his monthly payment, due on February 1, 2012, even though plaintiff had apparently already issued a check for that month.  *See id.* ¶¶ 37, 38; *see also* ECF 2-17 at 2, First Kucinski Letter.  And, as noted, plaintiff contends that his monthly payments are not due until the 16th of the month.  ECF 2 ¶ 1.  On February 10, 2012, plaintiff returned to his local M&T Branch to resolve the request

for payment.  ECF 2 ¶ 38.  After speaking with Mr. Higgins, it was agreed that plaintiff would issue a new check and that M&T would place a stop payment order on plaintiff's previous check, at its expense.  *Id.*; ECF 2-17 at 2, First Kucinski Letter.  That same day, plaintiff issued a new check for $729.  ECF 2 ¶ 38.  Soon after, M&T cashed both checks, thus causing an error of "'insufficient funds'" in plaintiff's checking account.   ECF 2 ¶ 39.  On or about February 17, 2012, after plaintiff notified M&T of the error, the Bank initiated a "'recon reversal fee … to replace the Funds taken unlawfully and without consent … back to the Plaintiffs [sic] … checking account."  *Id.* ¶ 40; *see also* ECF 2-17 at 2, First Kucinski Letter (stating that, by late February 2012, M&T had issued to plaintiff two refund checks totaling $729).

On or about March 3, 2012, plaintiff issued Check 4857, in the sum of $729, to M&T. *See* ECF 2 ¶ 41; ECF 2-14 at 1, Ex. N ("Check 4857").  It was drawn on the account of Canvas Wizard, Inc., and paid to "reverse the Recon reversal fee."  *See* ECF 2 ¶ 41; ECF 2-14 at 1, Check 4857.  On the back of Check 4857, plaintiff included a typed message, ECF 2-14 at 2 (emphasis added):

> By cashing this check M&T Bank and/or M&T Mortgage admits to errors M&T Bank has made to account [redacted]7177 and belonging to Canvas Wizard, Inc [sic] and the Mortgage [sic] Michael Bochenski has with M&T Mortgage.  *M&T Bank agrees to pay the Canvas Wizard invoice or invoices to cover time and damages for M&T Bank errors*.  M&T Bank will pay all legal fees in the event these errors are not repaired to Canvas Wizard's or good banking standards.

Plaintiff maintains that Harry Higgins, Vice President of M&T's Parole Branch, endorsed and deposited Check 4857.  *See* ECF 2 ¶¶ 42, 72; *see also* ECF 2-14 at 3.  Thereafter, in a letter dated March 7, 2012, plaintiff sent an "invoice" to his local M&T branch, for expenses he allegedly incurred as a result of the double-payment error.  ECF 2-18 at 2, Ex. R, Invoice Letter. He wrote, *id.*:

Dear Sir:

Your bill is, as follows:

| | |
|---|---:|
| 20 hours labor at $75.00 per hour | $1500.00 |
| Unauthorized loan to M&T Bank from 2/10/12 to 2/17/12 | |
| $379.01 at 20% interest compounded daily | 1496.07 |
| | |
| Balance Due | 2996.07 |

Our terms are Net 10 days, net + 2%, 11 days to 41 days

In the Complaint, plaintiff alleges that the Bank's failure to pay pursuant to the agreement set forth on Check 4857 is "theft fraud and conspiracy to commit fraud." ECF 2 ¶ 72. In addition, plaintiff contends: "James Falletto [Regional VP at plaintiff's local M&T branch] "promised to look into my problems with M&T's mortgagee division and did not do so as promised. The plaintiff decrees this fraud and mental anguish caused by James Falletto … requires $5000.00 remedy." *Id.* ¶ 59.

### D.  Alleged Harassment by M&T and its Employees

Plaintiff contends that "M&T continuous harassment has existed since January 2012 to present with no end in sight." *Id.* ¶ 43. Throughout the Complaint, plaintiff characterizes numerous actions taken by M&T and its employees as "harassment." *See generally id.* ¶¶ 19–22, 53, 54.

To illustrate, plaintiff states, *id.* ¶¶ 53, 54:

53. M&T Bank has charged late fees on payments within the grace period and waived some late fees that had payments paid within the grace period. To waive a fee that should not exist in the first place is fraudulent and harassment upon the plaintiff.

54. M&T bank's continued harassment by attorney Paul Kucinski and Nancy Terranova, Operations Manager sent letters to Michael Bochenski. Against the wishes of Michael Bochenski these two employees unlawfully refused to contact and/or mail documents to, Tyler Jay King, Michael Bochenski's attorney.

In addition, plaintiff identifies the following incidents as harassment, ECF 2 ¶¶19-22 (emphasis in original):

19. On or about April 9th 2012 M&T continued harassment of Michael Bochenski demanding payments of $ 0.68 … to the principal and $0.47 … to the interest, to make the account 004000093 balance. … This continued harassment shall have a remedy of $5,000 (five thousand dollars) to the plaintiff and is so decreed.

20. On or about April 9th – April 11th 2012, after some arbitrary, capricious and aggressive (*harassing*) phone calls from M&T …

21. On or about May 2nd, 2012 M&T called Michael Bochenski and required him to pay another check for the amount of $7.42. … This continued harassment requires punitive remedy of $5,000 ….

22. … Michael Bochenski has sought remedy multiple times without resolution while corresponding with a multitude of employees of M&T and it is continuing harassment of the plaintiff by M&T.

In sum, plaintiff claims that "[f]rom January 9th 2012 to April 11th 2012 M&T has called Michael Bochenski and/or required some petty and harassing requirement that requires time and effort and has caused harm."   ECF 2 ¶ 43.   In this respect, Bochenski avers: "M&T has *perpetrated* 31 separate days of harassment (uncompensated/stolen Funds) and the Plaintiff's uncompensated time was stolen …." *Id.* (emphasis in original).   As a result of M&T's conduct, plaintiff "decrees that he shall receive clear title on the property known as 1196 Tyler Ave Annapolis Maryland and described in the Deed of Trust and it is required as remedy to stop this continued and future harassment by M&T Bank." *Id.* ¶ 68; *see also id.*, Prayer ¶ 1.

### E.   Theft

Plaintiff claims that the Bank has stolen money from him.   In ECF 2 ¶ 33, for example, plaintiff alleges (boldface and underlining added by plaintiff):

33.   Since this loan, known as account 004000093 has been paid off on or about March 2012 M&T has stolen monies $5,119.81 … and M&T still has in its possession by extortion with the threat of foreclosure (Exhibit M).   This *improperly obtained* $5,119.81 … shall be paid back with 100% interest of principal which come to a remedy of $5,119.81 … and a punitive remedy for this fraud and extortion in the amount of $5,000.00 … for a total of $15,239.62 … is required and decreed by the plaintiff (Exhibit M). ___Punitive damages of $5,119.81 and initial amount improperly taken from Plaintiff Michael Bochenski are___

**_demanded to satisfactorily remedy Michael Bochenski for his loss of time and_**
**_use of his income._** (Exhibit M).

*See also* ECF 2 ¶ 46; *id.*, Prayer ¶¶ 8, 15.

Based on the allegations set forth in the Complaint, plaintiff claims that M&T Bank has "caused harm by intent and/or negligence and/or conspiracy to commit fraud for financial gain and/or to continuously harass, the plaintiff and is continuously attempting to confiscate the property known as 1196 Tyler Avenue in Annapolis, Maryland on or about July 5[th] 2012 without cause and continuously by fraud and/or conspiracy to commit fraud."  ECF 2 at 1.  Moreover, plaintiff alleges that he has "continually suffered harm from M&T fraud, theft and conspiracy to commit fraud and against Mr. Bochenski." *Id.* ¶ 70.

Additional facts are included in the Discussion.

## II.  Legal Standards

### A.  Rule 12(b)(6) Standard

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 & n.3 (2007).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, ____ U.S. ____, 135 S. Ct. 346 (2014) (per curiam).  But, the rule demands

more than bald allegations or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Twombly*, 550 U.S. at 555; *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show that [the] claim has substantive plausibility." *City of Shelby*, 135 S. Ct. at 347; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ….") (citation omitted); *Twombly*, 550 U.S. at 570; *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). The complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, even if recovery is "improbable." *Twombly*, 550 U.S. at 556. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

In considering a Rule 12(b)(6) motion, the court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see, e.g., Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (stating that the court must construe the facts "in the light most favorable to the nonmoving party"), *cert. denied*, ___ U.S. ___ , 132 S. Ct. 402 (2011). But, the court need not accept conclusory factual allegations devoid of any reference to actual events. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts. *See*

- 21 -

*Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992, 130 S. Ct. 1740 (2010).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief....'" *Brockington v. Boykins*, 637 F.3d 503, 505–06 (4th Cir. 2011) (citation omitted). *See Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) ("'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'") (citation omitted); *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201–02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

With respect to a motion to dismiss pursuant to Rule 12(b)(6), the court "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are

alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear [ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Goodman*, 494 F.3d at 464 (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

As noted, plaintiff appended 20 exhibits to his Complaint. *See* ECF 2-1–ECF 2-20. Ordinarily, in evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein …." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, in considering a challenge to the adequacy of the Complaint, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Because plaintiff has incorporated 20 exhibits into his Complaint, and defendant does not contest the authenticity of the documents, I will consider them in ruling on the Motion.[15]

I am mindful that plaintiff is a self-represented litigant.   Thus, his pleadings are "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'"   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).   "However, liberal construction does not absolve Plaintiff from pleading a plausible claim."   *Bey v. Shapiro Brown & Alt, LLP*, No. PWG–13–1562, ___ F. Supp. 2d ___, 2014 WL 661586, at *3 (D. Md. Feb. 20, 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10–3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, "[a] district court is not required to act as an advocate for a pro se litigant." *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978).   Nor is it obligated to "anticipate all arguments" or "conjure up questions never squarely presented," or to fashion claims for a pro se plaintiff.   *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475  U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint); *Williams v. Ozmint*, 716 F.3d 801, 811 (4th Cir. 2013) (stating that self-represented plaintiff's "'catch-all'" request for "'any other relief that seems just and proper'" was insufficient to preserve a claim to declaratory relief), *cert. denied*, ___ U.S. ___, 134 S. Ct. 1294 (2014); *Telford v. Vandusen*, 972 F.2d 342, *1 (4th Cir. 1992) (unpublished) (district court

---

[15] Indeed, these exhibits helped me to decipher plaintiff's factual allegations.

did not err in ignoring self-represented plaintiff's "property damage" claim, because plaintiff made only an "oblique reference to the property damage in the body of the complaint, [and] it [was] nowhere mentioned in the demand for judgment.").

As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278 (citing *Leeke*, 574 F.2d at 1152–53). What the Fourth Circuit stated in *Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir. 1992) (per curiam), is also apt:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), *cert. denied*, 382 U.S. 966 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

## B.  Rule 12(e) Standard

Fed. R. Civ. P. 12(e) provides, in relevant part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

The Fourth Circuit has stated that Rule 12(e), which governs motions for more definite statement, "must be read in conjunction with Rule 8." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973) ("[W]hen the complaint conforms to Rule 8(a) and it is neither so

vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement.").

Unlike a Rule 12(b)(6) motion, which tests the legal sufficiency of a complaint, a Rule 12(e) motion for more definite statement focuses on whether "'a party has enough information to frame an adequate answer.'" *Streeter v. SSOE Sys.*, No. WMN–09–CV–01022, 2009 WL 3211019, at *10 (D. Md. Sept. 29, 2009) (quoting *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904, 917 (M.D.N.C. 2005)). Such motions are "'designed to strike at unintelligibility rather than simple want of detail.'" *Seneca One Fin., Inc. v. Structured Asset Funding, LLC*, No. DKC 10–1704, 2010 WL 4449444, *2 (D. Md. Nov. 4, 2010) (quoting *Frederick v. Koziol*, 727 F. Supp. 1019, 1021 (E.D. Va. 1990) (internal quotation marks omitted)). But, they "are viewed with disfavor, and are rarely granted." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Ca. 1999).

When the information sought in connection with a Rule 12(e) motion "'is available or properly sought through discovery, the motion should be denied.'" *Seneca One Fin.*, 2010 WL 4449444, at *2 (quoting *Frederick*, 727 F. Supp. at 1020–21). In addition, if the court is satisfied that the complaint provides enough information to frame a responsive pleading, "a court should deny the Rule 12(e) motion and avoid delay in maturing the case." *Bayer Corp.*, 367 F. Supp. 2d at 917 (citing *Hodgson*, 482 F.2d at 824).

### C.  Fed. R. Civ. P. 9(b)

Plaintiff lodges claims for fraud. Mr. Bochenski's allegations of fraud implicate the heightened pleading standard under Fed. R. Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

*See, e.g., Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that a Maryland Consumer Protection Act claim that "sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"); *E-Shops Corp. v. U.S. Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims.").

Under Rule 9(b), a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

Rule 9(b) serves several salutary purposes. In *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), the Fourth Circuit identified four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

However, the plain text of Rule 9(b) permits general averment of aspects of fraud that relate to a defendant's state of mind. And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 786. Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of

material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, No. HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)); *accord Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11–3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013).

### D.  Choice of Law

Although M&T's Motion presumes that Maryland law applies to this case, neither party has expressly addressed the matter of choice of law.

As a preliminary matter, a federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  The law of the forum state, Maryland, guides this Court's choice-of-law analysis. *See Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. WDQ-13-0040, 2014 WL 346630, at *4 (D. Md. Jan. 29, 2014) ("When sitting in diversity, a federal court follows the choice-of-law rules of the forum state."); *Baker v. Antwerpen Motorcars Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011) ("In a federal question [claim] that incorporates a state law issue, . . . a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise.").

For tort claims, Maryland applies the principle of *lex loci delicti*, *i.e.*, the law of the "place of the alleged harm." *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Hefferman*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007).  Given the Property's location, and the conduct at issue, the alleged harm

would have occurred in Maryland.  *See* ECF 2 ¶ 1.  Accordingly, I will look to Maryland law with respect to the analysis of plaintiff's tort claims.

As to contract claims, Maryland ordinarily applies the law of the jurisdiction where the contract was made, unless the parties to the contract agreed to be bound by the law of another state.  *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529, 611 A.2 100, 101 (1992).  This principle is known as *lex loci contractus*.  *See*, *e.g.*, *Am Motorists Ins. Cio. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014).  A contract is formed where the last act necessary to make it binding occurred.  *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002).

### III. Discussion

In seeking dismissal, M&T argues, *inter alia*, that plaintiff's Complaint is "wholly incomprehensible" and "devoid of any 'factual content that [would allow] the court to draw the reasonable inference that [M&T] is liable for' any misconduct."  ECF 9-1 at 2 (citing *Iqbal*, 556 U.S. at 678).  As such, M&T argues that plaintiff's Complaint fails to satisfy the basic pleading requirements of Rule 8(a), and should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  *See id* at 1–2.  Alternatively, defendant posits that plaintiff should be directed to produce a more definite statement, pursuant to Fed. R. Civ. P. 12(e).  *See* ECF 9-1 at 2–3.

To be sure, plaintiff's Complaint contains a litany of rambling allegations.  Defendant complains that it is difficult to discern the causes of action plaintiff seeks to allege.  ECF 9-1 at 2–3.  Nonetheless, with the most liberal reading of the Complaint, several claims can be gleaned.

Plaintiff asserts claims of fraud, conspiracy to commit fraud, theft, and harassment, ECF 2 at 1.  He also alleges breach of ethical conduct by Kucinski, *id.* ¶ 10; and seeks "clear title" on

the Property.  ECF 2 ¶ 68; *id.*, Prayer ¶ 1.  In addition, plaintiff seems to suggest that he has claims for accord and satisfaction of his mortgage debt, intentional infliction of emotional distress, and negligent misrepresentation.  Notably, the Complaint does not mention any statutory grounds for relief.  *See generally* ECF 2.  Indeed, in plaintiff's First Motion to Strike, he states: "This is a Common Law suit and its simplicity in original form should be and was blessing for all that must deal with it."  ECF 19 at 2.

For the reasons that follow, I will grant M&T's Motion and dismiss plaintiff's Complaint, with prejudice, as to his claims of fraud; civil conspiracy; harassment; breach of ethical conduct; accord and satisfaction; intentional infliction of emotional distress; theft; and negligence.  In addition, I shall dismiss plaintiff's request for the remedy of "clear title," without prejudice. Finally, I will deny the Motion as to plaintiff's claim for an accounting.

## A. Fraud

As indicated, plaintiff makes repeated allegations of fraud committed by M&T, which generally fall into one of three categories.  The first group of fraud allegations pertains to the manner in which M&T managed plaintiff's PMI obligation.  According to Mr. Bochenski, he was never required to maintain a PMI policy.  ECF 2 ¶¶ 13, 30, 63.  Thus, in his view, any suggestion by M&T generally—or in the letters from Carpenter, Terranova, and Kucinski—that he was so obligated is fraudulent.  *Id.*; *see also id.* ¶ 12; ECF 2-5 at 1, Bancone Letter.  Plaintiff also disputes that M&T reviewed his account prior to making a determination of his PMI insurance obligations, because a complete review would have revealed that no PMI policy was required.  *See* ECF 2 ¶ 14.  Finally, with respect to the PMI policy, plaintiff alleges that, in order to procure the refund of plaintiff's excess payments, M&T employees engaged in "secret communications" with the Department, without his consent, and failed to disclose information

about these negotiations to him.  ECF 2 ¶ 66; *see also id.* ¶ 16.  In his view, the conduct amounts to fraud.

A second category of fraud allegations relates to various statements in the First and Second Kucinski Letters, which plaintiff characterizes as "actionable fraud."  ECF 2 ¶¶ 62-64. And, the third group of fraud allegations seems to relate to plaintiff's demands that M&T apply his prior PMI payments to the principal of his Loan or render a "full accounting" of his mortgage, which would indicate that the balance on his mortgage has been paid in full.  *See, e.g.*, *id.* ¶ 60.  Mr. Bochenski characterizes these various alleged failures of M&T to act as directed and to correct his account as "actionable fraud."  *See, e.g.*, *id.* ¶¶ 12, 14, 33

Plaintiff is plainly unhappy with M&T.  But, his allegations fall woefully short of fraud.

Under Maryland common law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'"  *Sass v. Andrew*, 152 Md. App. 406, 432, 832 A.2d 247, 261 (2003) (citation omitted).  Regardless of the particular theory, the plaintiff must establish the elements of fraud "by clear and convincing evidence."  *Md. Envir. Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512, 516 (2002).  In an action for fraudulent misrepresentation, the plaintiff ordinarily must show:

1) that the defendant made a false representation to the plaintiff;

2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;

3) that the misrepresentation was made for the purpose of defrauding the plaintiff;

4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and

5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994); *accord Thomas v. Nadel*, 427 Md. 441, 451 n.18, 48 A.3d 276, 282 n.18 (2012); *Sass*, 152 Md. App. at 429, 832 A.2d at 260.

"A 'false representation' is a statement, conduct, or action that intentionally misrepresents a material fact." *Sass*, 152 Md. App. at 430, 832 A.2d at 260. To be actionable, then, a false representation "must be of a material fact." *Gross v. Sussex, Inc.*, 332 Md. 247, 258, 630 A.2d 1156, 1161 (1993). "A 'material' fact is one on which a reasonable person would rely in making a decision," *Sass*, 152 Md. App. at 430, 832 A.2d at 260, or a fact that "'the maker of the misrepresentation knows ... [the] recipient is likely to regard ... as important.'" *Gross*, 332 Md. at 258, 630 A.2d at 1161 (citation omitted). Moreover, the fraudulent "misrepresentation must be made with the deliberate intent to deceive." *Sass*, 152 Md. App. at 430, 832 A.2d at 260 (citing *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 704, 715 A.2d 188 (1998)); *accord Rhee v. Highland Dev. Corp.*, 182 Md. App. 516, 524, 958 A.2d 385, 390 (2008). So, the defendant must "know[ ] that his representation is false" or be "recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 232, 652 A.2d 1117 (1995).

Ordinarily, under Maryland law, a mere failure to disclose a material fact does not constitute fraud, in the absence of a legal duty to disclose that inheres in certain types of transactions. "Maryland recognizes no general duty upon a party to a transaction to disclose facts to the other party." *Gaynor*, 370 Md. at 97, 803 A.2d at 516. However, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 239, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215 (1985).

Fraud based on active suppression of material facts is the variety of fraud referred to as "fraudulent concealment." The Maryland Court of Appeals has said: "Fraudulent Concealment 'is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed.'" *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 138, 916 A.2d 257, 274 (2007) (citation omitted). In other words, it describes a "situation where the defendant actively undertakes conduct or utters statements designed to, or that would, divert attention away from" a material fact. *Id*. at 138 n.11, 916 A.2d at 274 n.11.

"'To create a cause of action, concealment must have been intentional and effective-the hiding of a material fact with the attained object of creating or continuing a false impression as to that fact. The affirmative suppression of the truth must have been with intent to deceive.'" *Fegeas v. Sherrill*, 218 Md. 472, 476–77, 147 A.2d 223, 225–26 (1958). As the *Rhee* Court explained, 182 Md. App. at 536, 958 A.2d at 396 (quoting *Stewart v. Wyoming Cattle-Ranche Co.*, 128 U.S. 383 (1888)) (alterations in *Rhee*):

> "[T]he concealment or suppression [of a material fact] is in effect a representation that what is disclosed is the whole truth. The gist of the action [for fraud] is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant …."

A claim of failure to disclose "requires only that the defendant remain silent about, or omit, facts that the defendant had a duty to disclose." *Lloyd*, 397 Md. at 138 n.11, 916 A.2d at 274 n.11. Where the fraudulent concealment claim is based on a duty to disclose, Maryland courts have formulated the elements of the cause of actions as follows, *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010) (quoting *Lloyd*, 397 Md. at 138, 916 A.2d at 274) (emphasis omitted):

"(1) [T]he defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment."

The Maryland Court of Appeals encapsulated the foregoing principles in *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 100 n.14, 756 A.2d 963, 976 n.14 (2000) (internal citations omitted):

> Ordinarily, non-disclosure does not constitute fraud unless there exists a duty of disclosure. Absent a fiduciary relationship, this Court has held that a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite the exercise of reasonable diligence, and that, in such cases, the affirmative act on the part of the defendant must be more than mere silence; there must be some act intended to exclude suspicion and prevent injury, or there must be a duty on the part of the defendant to disclose such facts, if known.

Of import here, "'[a] plaintiff's subjective misunderstanding of information that is not objectively false or misleading cannot mean that a defendant has committed the tort of fraudulent misrepresentation.'" *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 657 (6th Cir. 2013). And, as indicated, allegations of fraud implicate the heightened pleading standard of Fed. R. Civ. P. 9(b), which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." And, "[e]ven where a plaintiff is proceeding *pro se*, the particularity requirements of Rule 9(b) apply." *Coulibaly*, *supra*, 2011 WL 3476994, *19 n.23.

In seeking dismissal of the fraud claims, defendant argues, ECF 9-1 at 9:

> [P]laintiff has not even satisfied the basic requirements of Fed. R. Civ. P. 8, much less the heightened pleading standard applicable to actions predicated on fraud. Indeed, conspicuously absent from the complaint is any allegation that M&T engaged in any specific conduct, let alone made a false representation to Plaintiff.

Plaintiff makes no effort to plead with any degree of specificity who made the alleged "false representation," the contents of the representation, or when the representation was made as required under Rule 9(b).

Plaintiff's Complaint is replete with allegations of misconduct by the Bank. But, plaintiff's claims of fraud fail because plaintiff does not allege facts to show that he reasonably relied on defendant's alleged statements or conduct. Nor does plaintiff refer to facts that show defendant's employees had the requisite intent of malice or reckless indifference to the truth.

As noted, M&T only became the Loan servicer in November 2011, long after plaintiff obtained the Loan and began to pay PMI. Notwithstanding plaintiff's dissatisfaction with the manner in which M&T handled his PMI policy, the Complaint does not suggest that M&T sought to defraud plaintiff. To the contrary, the Bank's communications reveal repeated attempts to address plaintiff's concerns. Nor did plaintiff reasonably rely, to his detriment, on any representations or omissions by M&T employees. Indeed, plaintiff's PMI policy was terminated after M&T took over the servicing of the Loan. As a result, plaintiff received a refund from the Department. ECF 2 ¶ 27; *see also* ECF 2-7 at 1–2, PMI Refund Checks. Although Mr. Bochenski seems to dispute vehemently that any mortgage insurance policy was actually required, *see e.g.*, ECF 2-5 at 1, Bancone Letter, M&T clearly had no role in requiring plaintiff to obtain PMI, nor did M&T have any role in plaintiff's continuation of PMI payments during the life of the Loan.

Similarly, Mr. Bochenski's allegations of fraud in connection with the Kucinski letters do not include any facts about the manner in which plaintiff relied on the letters to his detriment. Although Mr. Bochenski disputes Mr. Kucinski's position on a variety of issues related to his mortgage account, such as how much was due on his mortgage and whether M&T had previously provided plaintiff with an escrow statement, ECF 2 ¶¶ 62–64, a mere dispute does not

amount to fraud.   Mr. Bochenski fails to allege facts as to his detrimental reliance on any statements made in the First or Second Kucinski letters.

With respect to the allegations that M&T demanded payment on the mortgage although the Loan had been paid in full, based on plaintiff's PMI overpayments or the accord and satisfaction,  ECF 2 ¶¶ 21, 29–32,  plaintiff has failed to plead facts supporting the requisite intent necessary to state a claim for fraud.   Although it is apparent that plaintiff believes his mortgage obligation was satisfied, he offers no facts to support the notion that M&T knew the Loan was satisfied, or that it acted with malice of reckless indifference to the truth when seeking payment on the Loan from him.

Therefore, these claims of fraud are subject to dismissal, with prejudice.

## B.  Conspiracy

Plaintiff makes general allegations that M&T and its employees are liable for "conspiracy to commit fraud."  *See id.* ¶¶ 18, 25, 27, 58, 64, 65, 70.  In particular, plaintiff states that "the actions taken by Claudy Satchell and/or Aimee Carpenter and/or Nancy Terranova and/or other unknown M&T employees has conspired to commit fraud, with or against the Maryland Housing Fund." *Id.* ¶ 18.

In Maryland, civil conspiracy is defined as "'a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'"  *Hoffman v. Stamper*, 385 Md. 1, 24, 867 A.2d 276, 290 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221, 269 A.2d 815, 824 (1970)).  The plaintiff must also prove the commission of an "overt act" in furtherance

of the agreement that causes the plaintiff to suffer actual injury.  *Stamper*, 385 Md. at 25, 867 A.2d at 290.

Notably, "in order to set forth a tort claim for civil conspiracy, the plaintiffs must adequately allege the existence of the underlying tortious activity."  *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 199, 665 A.2d 1038, 1049 (1995).  That is because "'conspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."  *Id.* at 189, 665 A.2d at 1045 (citation omitted); *accord Stamper*, 385 Md. at 25, 867 A.2d at 290.  Rather, the tort of civil conspiracy "lies in the act causing the harm; the agreement to commit the act is not actionable on its own but rather is in the nature of an aggravating factor."  *Stamper*, 385 Md. at 25, 867 A.2d at 290.  Accordingly, a court should not entertain a claim for civil conspiracy to commit fraud unless the plaintiff has sufficiently alleged an underlying fraud.  *See Alleco*, 340 Md. at 199, 665 A.2d at 1049.

In *Alleco*, plaintiffs accused defendants of a "civil conspiracy to commit fraud," but failed to allege the first element of a cause of action for fraud—that defendants made a false representation to plaintiffs.  *Id.* at 196, 665 A.2d at 1048.  In affirming dismissal of the civil conspiracy claim, the Maryland Court of Appeals reasoned, *id.* at 199, 665 A.2d at 1049 (emphasis added):

> [I]n order to set forth a tort claim for civil conspiracy, the plaintiffs must adequately allege the existence of the underlying tortious activity.  In the present case, the plaintiffs have failed to allege adequately the *underlying fraud*.  For this reason, the circuit court's dismissal … was correct.

Here, plaintiff argues that various M&T employees conspired to defraud him.  *See*, *e.g.*, ECF 2 ¶ 14.  But, as already established, the facts alleged in plaintiff's Complaint are wholly insufficient to state a cause of action for fraud.  Like the plaintiffs in *Alleco*, without a plausible

claim of fraud as an underlying tort, Mr. Bochenski's claim of "conspiracy to commit fraud" cannot survive dismissal. *See Alleco*, 340 Md. at 199, 665 A.2d at 1049. Moreover, beyond bald accusations, there is no factual basis to sustain a civil conspiracy claim. Therefore, this claim is subject to dismissal, with prejudice.

## C. Harassment

Plaintiff alleges "harassment" on the part of M&T. To recount a few examples, plaintiff asserts: "On or about April 9th 2012 M&T continued harassment of Michael Bochenski demanding payments of $0.68 … to the principal and $0.47 … to the interest, to make the account 004000093 balance." ECF 2 ¶ 19. Plaintiff also states, *id.* ¶ 43 (emphasis in original):

> M&T continuous harassment has existed since January 2012 to present with no end in sight. From January 9th 2012 to April 11th 2012 M&T has called Michael Bochenski and/or required some petty and harassing requirement that requires time and effort and has caused harm. M&T has *perpetrated* 31 separate days of harassment.

Further, plaintiff contends, *id.* 2 ¶ 53:

> M&T Bank has charged late fees on payments within the grace period and waived some late fees that had payments paid within the grace period. To waive a fee that should not exist in the first place is … harassment upon the plaintiff.

Notwithstanding the plethora of accusations in the Complaint, plaintiff's claim for harassment fails. To be sure, plaintiff is annoyed, if not angry, because he seems to believe the Bank was petty, mistaken in its claims, unresponsive, and caused plaintiff to waste his time. Undoubtedly, many customers of many different banks have had frustrating disputes from time to time with their banks or other business entities. Such disputes, like modern-day inconveniences generally, do not equate to harassment.

The allegations here are conclusory, bare assertions, and they do not satisfy *Twombly* and *Iqbal* with respect to a civil claim of harassment.[16]   This claim is subject to dismissal, with prejudice.

### D.  Theft

Plaintiff's Complaint makes several references to "theft" on the part of M&T.  For example, plaintiff seeks recovery for "theft of Funds taken by M&T by threat of untrue statements and legal force Known as Intent to Foreclose."  ECF 2, Prayer ¶ 8; *see also id.* ¶ 15 ("Michael Bochenski shall get immediate remedy from the defendant in the amount of $5,000.00 … for theft of funds stolen July 10th 2012 for the account 004000093 that is paid off.").  Also, with regard to the contested PMI payments, plaintiff suggests that "M&T … may have stolen these $13.00 (thirteen) overpayments with interest from the Treasury of Maryland equating to, at least $14,000 (fourteen thousand dollars) (Exhibit F)."  *Id.* ¶ 46.  Further, plaintiff asserts: "From January 9th 2012 to April 11th 2012 M&T has called Michael Bochenski and/or required some petty and harassing requirement that requires time and effort ... and the Plaintiff's uncompensated time was stolen …."  *Id.* ¶ 41.  And, as noted, in ECF 2 ¶ 33, plaintiff also alleges that the Bank stole $5,119.81 from him.

Plaintiff's allegations that M&T "stole" his money and committed "theft" is tantamount to the accusation of a crime, which is not actionable here; plaintiff has no authority to prosecute a crime.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *accord Leeke v.*

---

[16] Perhaps plaintiff seeks to allege that the Bank breached a duty of good faith and fair dealing.  But, such a claim requires the plaintiff to prove that the defendant "act[ed] in such a manner as to prevent [the plaintiff] from performing his obligations under [a] contract."  *Parker v. Columbia Bank*, 91 Md. App. 346, 366, 604 A.2d 521, 531 (1992).  Plaintiff has not alleged a claim under a contract.

*Timmerman*, 454 U.S. 83, 86 (1981); *Ras-Selah: 7 Tafari: El v. Glasser & Glasser PLC*, 434 Fed. App'x 236, 236 (4th Cir. 2011) (per curiam) ("A private person may not initiate a criminal action in the federal courts.") (citing *Linda R.S.*, 410 U.S. at 619); *see also Myers v. State*, 58 Md. App. 211, 231, 472 A.2d 1027, 1037 (1984) ("[T]here are in Maryland no private prosecutions. All prosecutions are conducted by and on behalf of the State.").

The claim superficially resembles the tort of "conversion." Conversion is the intentional exercise of dominion or control over a chattel that so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel. *United States v. Arora*, 860 F. Supp. 1091 (D. Md. 1994), *aff'd*, 56 F.3d 62 (4th Cir. 1995); RESTATEMENT (SECOND) OF TORTS § 222A(1) (1965). However, "the general rule is that monies are intangible and, therefore, not subject to a claim for conversion." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 564, 731 A.2d 957, 966 (1999). Money may only serve as the subject of a conversion claim where the plaintiff seeks to recover "specific segregated or identifiable funds." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 259 n.3, 841 A.2d 828, 834 n.3 (2004) (citing *Jasen*, 354 Md. at 564, 731 A.2d at 966).

For example, in *Bahari v. Countrywide Home Loans*, No. Civ. CCB-05-2085, 2005 WL 3505604, at *5 (D. Md. Dec. 16, 2005), plaintiffs sought to recover monies paid to defendant as a premium for an insurance policy by claiming conversion. The district court explained that, "[i]n Maryland, 'money, i.e., currency, is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds.'" *Id.* (quoting *Darcars*, 379 Md. at 259 n.3, 841 A.2d at 834 n.3). Judge Blake elaborated, *Bahari*, 2005 WL 3505604, at *5 (citations omitted):

> [T]o succeed, the [plaintiffs] must show that [defendant] has an obligation to
> return the *specific bills* that were charged to the [plaintiffs'] account. By contrast,

if defendant merely owes a debt of money, which could be satisfied by check or other currency besides the specific bills that the [plaintiffs] tendered, the [plaintiffs'] cause of action for conversion must fail."

Accordingly, Judge Blake dismissed the conversion claim, concluding that plaintiffs' overpayment was not "readily identifiable" because plaintiffs could not "'point to any particular currency as the subject of the purported conversion.'" *Bahari*, 2005 WL 3505604, at *6 (quoting *Coots v. Allstate Life Ins. Co*., 313 F. Supp. 2d 539, 543 (D. Md. 2004)).

Here, Mr. Bochenski seeks compensation for what he claims were unnecessary or coerced payments to M&T, *see* ECF 2 ¶¶ 33, 46, and uncompensated time, *id.* ¶ 41, but he does not seek to recover "specific or identifiable funds" that he paid to M&T. *Darcars*, 379 Md. at 259 n.3, 841 A.2d at 834 n.3. Put another way, the items that plaintiff claims were stolen are "intangible and, therefore, not subject to a claim for conversion." *Jasen*, 354 Md. at 564, 731 A.2d at 966. Moreover, plaintiff's demands could be satisfied through "other currency besides the specific bills" that plaintiff tendered to M&T. *Bahari*, 2005 WL 3505604, at *5.

Nonetheless, in the light most favorable to plaintiff, he appears to contend that the Bank improperly or erroneously charged him fees or sums that were not due and owing. Thus, insofar as plaintiff seeks the return of money that he paid to M&T, plaintiff's Complaint might be liberally construed as alleging the Maryland common count for "money had and received."

"'The action for money had and received is a common count used to bring a restitution claim under the common law writ of assumpsit.'" *Bourgeois v. Live Nation Entm't, Inc*., 430 Md. 14, 46, 59 A.3d 509, 528 (2013) (*Benson v. State*, 389 Md. 615, 652–53, 887 A.2d 525, 547 (2005)). Generally, the count "'lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain.'" *Bourgeois*, 430 Md. at 46, 887 A.2d at 528 (quoting *Benson*, 389 Md. at 652–53, 126 A.2d at 547). However,

there are "caveats and nuances" that limit the circumstances in which this common count will apply. *Bourgeois*, 430 Md. at 47, 59 A.3d at 528.

Citing POE'S PLEADING AND PRACTICE, 6th (Sachs) ed. §§ 119–26 (1970), the *Bourgeois* Court explained that the common law claim for "money had and received" has several branches. *See Bourgeois*, 430 Md. at 47–48, 59 A.3d at 528–29. The court outlined several of those branches, noting that the action may lie to recover money plaintiff paid "upon a mistake of fact or law"; "to recover money obtained by fraud or false pretenses"; to recover money paid upon an "executory illegal contract"; or, "in certain circumstances," such as when the parties are not *in pari delicto*, to recover money "paid under an executed illegal contract." *Bourgeois*, 430 Md. at 47–48, 59 A.3d at 528–29; *see also Bourgeois v. Live Nation, Inc.*, 3 F. Supp. 3d 423, 437–38 (D. Md. 2014).

Plaintiff's factual allegations do not fit within any of these branches. First, plaintiff does not allege that his payments to M&T were based on an illegal contract or that the parties were not *in pari delicto*. *Bourgeois*, 430 Md. at 51, 59 A.3d at 530–31. Second, plaintiff's Complaint fails to allege facts from which any fraud may be inferred. Finally, plaintiff does not allege that his PMI and mortgage payments to M&T were the result of a "mistake of fact or law." For example, as early as 1999, plaintiff emphatically expressed his belief that he was not legally obligated to carry PMI, *see* ECF 2-5 at 1, Bancone Letter, and yet, plaintiff continued to make monthly PMI payments for about 13 more years. *See* ECF 2 ¶ 30; *see also* ECF 2-3 at 1, Terranova Letter. Similarly, plaintiff's repeated assertion that his Loan was "paid off" contradicts any notion that his Loan payments were the result of a mistaken belief that he was obligated to make such payments. *See* ECF 2 ¶ 60.

Plaintiff's claim of theft shall be dismissed, with prejudice.

### E.  Breach of Ethical Conduct

Plaintiff demands monetary relief for Mr. Kucinski's alleged "breach of ethical conduct." ECF 2 ¶ 10.  Under the Maryland Lawyer's Rules of Professional Conduct ("MRPC"), a lawyer may face serious professional consequences for engaging in fraud or other misconduct.  *See generally* MRPC 8.4(c).  But, the Rules do not create a private right of action.  *See id.*, Preamble ¶ 20 ("Violation of a Rule does not itself give rise to a cause of action against a lawyer nor does it create any presumption that a legal duty has been breached.").  Thus, to the extent that plaintiff seeks to hold M&T liable for Mr. Kucinski's alleged "breach of ethical conduct" as an attorney, such claim is dismissed, with prejudice.

### F.  Accord and Satisfaction

Plaintiff seems to suggest that he has a claim for accord and satisfaction.

As noted, plaintiff avers that, on or about May 2, 2012, "M&T called Michael Bochenski and required him to pay another check for the amount of $7.42 …."  ECF 2 ¶ 21.  Plaintiff contends that, the next day, he issued a check to M&T for $7.42.  *Id.*; *see* ECF 2-7 at 3, Check to M&T Bank from Canvas Wizard, Inc., dated May 3, 2012 ("Check 4895").  On the front of Check 4895, the memo line reads: "FULL PAYOFF OF BALANCE."  ECF 2-7 at 3, Check 4895.  On the back, the check included a typed message that stated, *id.:* "By cashing this check, M&T Bank agrees, to payoff mortgage 0040000093."  Accordingly, plaintiff argues that "May 3rd 2012 shall be the final payment of the account 0040000093 …."  ECF 2 ¶ 21.  In this way, plaintiff appears to argue that this check operated as an accord and satisfaction on his mortgage Loan.

In *Jacobs v. Atlantco Ltd. Partnership*, 36 Md. App. 335, 340-41, 373 A.2d 1255, 1258 (1977), the Maryland Court of Special Appeals adopted the definition of accord and satisfaction found in 1 C.J.S., Accord and Satisfaction § 1 (1936 & Supp. 1976):

> Accord and satisfaction is a method of discharging a contract or cause of action, whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other, and perform such agreement, the 'accord' being the agreement, and the 'satisfaction' its execution or performance.

*See also Automobile Trade Assoc. v. Harold Folk Enterprises*, 301 Md. 642, 665, 484 A.2d 612 (1984); *Wickman v. Kane*, 136 Md. App. 554, 561, 766 A.2d 241, *cert. denied*, 364 Md. 462, 773 A.2d 514 (2001); *Kimmel v. Safeco Insurance Co.*, 116 Md. App. 346, 361, 696 A.2d 482 (1997); *Barry Properties v. Blanton & McCleary*, 71 Md. App. 280, 286, 525 A.2d 248 (1987); *Air Power, Inc. v. Omega Equipment Corp.*, 54 Md. App. 534, 538, 459 A.2d 1120 (1983).

In *Kimmel*, *supra*, 116 Md. App. at 357, 696 A.2d at 488-87, the Maryland Court of Special Appeals explained the doctrine as follows (emphasis added): "[W]hen a claim is *disputed*, acceptance of payment, coupled with *knowledge* that payment is intended fully to satisfy a disputed claim, constitutes an accord and satisfaction that bars any further recovery." However, payment of a claim or debt that one already is obligated to pay, when the claim or debt is due and owing, ascertainable in amount, and not controverted, will not serve as consideration for an accord. *See Eastover Co. v. All Metal Fabricators, Inc.*, 221 Md. 428, 433, 158 A.2d 89, 91–92 (1960).

In addition to a bona fide dispute, a valid accord requires that the creditor have certain knowledge that a payment is intended to be in full satisfaction of the claim. *Kimmel*, 116 Md. at 357, 696 A.2d at 482; *accord Washington Homes v. Baggett*, 23 Md. App. 167, 174, 326 A.2d 206, 210 (1974) ("There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered

to him as full satisfaction of his claim and not otherwise.") (quoting 6 A. Corbin, Contacts, § 1277 (1962)).  The facts alleged in plaintiff's Complaint fail to show that plaintiff's unilateral writing on Check 4895 constituted an accord and satisfaction.

First, neither plaintiff's Complaint nor the message on the back of Check 4895 explains how the payment was intended to satisfy a bona fide dispute between plaintiff and the Bank.  *See* ECF 2 ¶ 21.  As noted, Check 4895 was drawn on the account of Canvas Wizard, Inc., not plaintiff.  It expressly states: "This instrument is an invoice for mistakes made by M&T Bank …."  *See* ECF 2-7 at 3, Check 4895.  Although plaintiff states that M&T "received check #4895," he does not assert that M&T had knowledge that the payment from Canvas Wizard, Inc. was intended to serve as full payment on the balance of plaintiff's mortgage.  For the foregoing reasons, plaintiff's allegations are insufficient to state a claim that Check 4895 operated as an accord and satisfaction of his mortgage.  This claim is subject to dismissal, with prejudice.

### G.  Intentional Infliction of Emotional Distress

As indicated, plaintiff makes a reference to "mental anguish" that he has experienced as a result of the actions of one particular M&T employee, James Falletto.  ECF 2 ¶ 59.  In his Complaint, plaintiff states: "James Falletto [Regional Vice President at plaintiff's local M&T branch] "promised to look into my problems with M&T's mortgagee division and did not do so as promised.  The plaintiff decrees this fraud and *mental anguish* caused by James Falletto … requires $5000.00 remedy."  *Id.* (emphasis added).  Based on these facts, it seems that plaintiff may be attempting to allege intentional infliction of emotional distress.

"Intentional infliction of emotional distress is a cognizable tort in Maryland."  *Abrams v. City of Rockville*, 88 Md. App. 588, 597, 596 A.2d 116, 120 (1991).  However, the tort "is rarely viable, and is to be used sparingly and only for opprobrious behavior that includes truly

outrageous conduct." *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009) (Shedd, J., concurring) (quoting *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514, 665 A.2d 297, 319 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996)) (internal citations and quotations omitted in *Bagwell* ), *aff'd*, 562 U.S. 443 (2011); *see also Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997).

To recover in Maryland for the tort of intentional infliction of emotional distress, a plaintiff must show that defendant's conduct was (1) intentional or reckless, (2) extreme and outrageous, (3) causally connected to plaintiff's emotional distress, and (4) that the resulting distress was severe. *Crouch v. City of Hyattsville*, DKC-09-2544, 2010 WL 3653345, at *7–8 (D. Md. Sept. 15, 2010); *see Snyder*, 580 F.3d at 231; *Baltimore–Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 701 (D. Md. 2003); *Figueiredo–Torres v. Nickel*, 321 Md. 642, 653, 584 A.2d 69, 74–75 (1991); *Harris v. Jones*, 281 Md. 560, 566–67, 380 A.2d 611, 614 (1977); *Borchers v. Hrychuk*, 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999).  Moreover, "'[e]ach of these elements must be pled and proved with specificity.  It is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist.'" *Crouch*, 2010 WL 3653345, at *8 (quoting *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175, 552 A.2d 947, 959 (1989)); *see also Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).  Notably, "[f]ailure to allege or prove any one of these elements is fatal[.]" *Abrams*, 88 Md. App. at 598, 596 A.2d at 120.

The "extreme and outrageous" standard is quite high.  *See generally Bagwell*, 106 Md. App. at 515, 665 A.2d at 319 (the tort of intentional infliction of emotional distress is "rigorous, and difficult to satisfy").  The defendant's conduct must be "'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in

a civilized [community].'" *Farasat*, 32 F. Supp. 2d at 247–48 (*quoting Harris*, 281 Md. at 567, 380 A.2d at 614).  Indeed, "[t]o be actionable, the conduct relied upon 'must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung.'" *Farasat*, 32 F. Supp. 2d at 248 (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 59–60, 5021 A.2d 1057, 1064, *cert. denied*, 306 Md. 118, 507 A.2d 631 (1986)).

The allegations generally, and those regarding Mr. Falletto in particular, fall far short of stating a claim for intentional infliction of emotional distress.  Plaintiff has not alleged facts that show that the Bank or Mr. Falletto engaged in conduct that was intentional or reckless—much less outrageous—as required under Maryland law.

To the extent that plaintiff includes allegations with respect to mental anguish in his other submissions, I cannot consider them.  The Fourth Circuit has stated: "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned."  *United States v. Al–Hamdi*, 356 F.3d 564, 571 n.8 (4th Cir. 2004) (declining to consider argument first raised in reply brief); *see also United States v. Willia*ms, 445 F.3d 724, 736 n.6 (4th Cir. 2006) (declining to consider an argument raised for the first time in the reply brief); *Hanlin–Cooney v. Frederick Cnty., Md.*, 2014 WL 576373, at *11 n.32 (D. Md. Feb. 11, 2014) (declining to consider an argument first raised in reply brief).  The rationale behind this general principle is that the opposing party would be prejudiced by a consideration of the argument absent an opportunity to respond.  *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) (citing *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003)).

This claim is subject to dismissal, with prejudice.

## H.  Negligence and Negligent Misrepresentation

Plaintiff states that "M&T Bank and its subdivisions … have caused harm … by … negligence."  ECF 2 at 1.  Although plaintiff makes numerous allegations of "error" on the part of M&T employees, he has used the word "negligence" only once in his 27-page, single-spaced complaint.  *See id.* ¶ 1.  But, in a very liberal review of the Complaint, when the claims of error are read within the context of the Complaint as a whole, plaintiff seems to attempt to state a claim for negligence or negligent misrepresentation.  *See, e.g.*, *id.* ¶¶ 6–7, 17, 30, 37–39, 50, 67.

In Maryland, to establish negligence, a plaintiff must prove the existence of four elements: "a duty owed to him (or to a class of which he is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986); *accord 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013) ("[T]o assert a claim in negligence, the plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.") (quoting *Lloyd*, *supra*, 397 Md. at 131–32, 916 A.2d at 270–71) (emphasis omitted).

As to negligent misrepresentation, the Maryland Court of Appeals set forth the elements in *Lloyd*, *supra*, 397 Md. at 136, 916 A.2d at 273:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

Numerous Maryland cases are to the same effect.  *See, e.g.*, *Griesi v. Atlantic Gen'l Hosp. Corp.*, 360 Md. 1, 11, 756 A.2d 548, 553 (2000); *Blondell*, *supra*, 413 Md. at 119, 991 A.2d at 94; *Valentine v. On Target*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999); *Gross*, *supra*, 332 Md. at 256, 630 A.2d at 1161; *Weisman v. Connors*, 312 Md. 428, 444, 540 A.2d 783, 791 (1988); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 336–37, 439 A.2d 534, 539 (1982); *Virginia Dare Stores v. Schuman*, 175 Md. 287, 291–92, 1 A.2d 897, 899 (1938); s*ee also Heritage Oldsmobile–Imports v. Volkswagen of Am., Inc*., 264 F. Supp. 2d 282, 290–91 (D. Md. 2003).

Whether the cause of action is one in negligence or negligent misrepresentation, plaintiff cannot allege an actionable claim without first demonstrating that the defendant owed him a duty in tort.  *See Parker v. Columbia Bank*, 91 Md. App. 346, 367, 604 A.2d 521, 531 (1992) ("In order to state a cause of action as to ... negligent misrepresentation, [and] negligence ... the [plaintiffs] must demonstrate a duty owed to them by [the defendants].") (citations omitted).

"Dealings between a bank and its customer generally do not allow for claims sounding in negligence."  *Van Leer v. Deutsche Bank Securities, Inc.*, 479 Fed. App'x 475, 481 (4th Cir. 2012).  This is because "the relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between debtor and creditor and is not fiduciary in nature." *Spaulding*, *supra*, 714 F.3d at 778 (citations and internal quotations omitted); *see Van Leer*, 479 Fed. App'x at 481; *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 633 (D. Md. 2009).

*Spaulding*, 714 F.3d 769, provides guidance.  There, the Fourth Circuit affirmed the dismissal of plaintiff's negligence claim based on plaintiff's failure adequately to allege a duty on the part of the defendant mortgage servicer.  *Id*. at 778–80.  In so holding, the Court

explained, *Spaulding*, 714 F.3d at 778–79 (quoting *Parker*, 91 Md. App. at 369, 374, 604 A.2d at 532, 535) (internal citations omitted)):

> "'Courts have been exceedingly reluctant to find special circumstances sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement. … [I]n cases … where there are none of these special circumstances and no contractual basis for a special duty of care is alleged, a lender owes no duty of care to its borrower.'"

According to plaintiff, M&T was unresponsive and its employees committed multiple errors with respect to his account.  For example, he claims the Bank misinterpreted the Deed of Trust document for plaintiff's mortgage, ECF 2 ¶ 6–7; failed to provide plaintiff with a "proper accounting," *id.* ¶ 17; failed to apply plaintiff's PMI payments to the mortgage balance as directed by Mr. Bochenski, *id.* ¶ 30; cashed two mortgage payment checks from plaintiff even though the M&T ordered a stop payment on the first check, *id.* ¶ 37–39; failed to correct inaccuracies in plaintiff's mortgage account, *id.* ¶ 50; "promised to look into [plaintiff's] problems with M&T's mortgagee division and did not do so as promised," ECF 2 ¶ 59; and transferred funds from plaintiff's M&T account to Bank of America without plaintiff's permission. *Id.* ¶ 67.

The record is replete with evidence, supplied by plaintiff, which shows that the Bank attempted to respond to plaintiff's complaints, injuries, and demands.  In any event, for each of plaintiff's allegations, plaintiff fails to assert a contractual basis for his claims, and also fails to allege facts to establish some essential element of negligence or negligent misrepresentation. Nor does the Complaint show (or even allege) that M&T, as plaintiff's mortgage servicer, owed him a special duty of care—either because of "special circumstances" or because of a "contractual basis." *See generally id.*; *Spaulding*, 714 F.3d at 778–79.  And, "[a]bsent a duty of care there can be no liability in negligence." *Jacques*, 307 Md. at 532, 515 A.2d at 758.

"Negligence" does not encompass all behavior that falls short of perfection.  Rather, it refers to conduct that breaches a duty of "reasonable care."  *See Spaulding*, 714 F.3d at 779–80.  Here, as noted, plaintiff provided evidence of considerable contact between M&T and plaintiff, which establishes that M&T was responsive to plaintiff's concerns and the Bank's errors.  *See*, *e.g.*, ECF 2-3 at 2, Terranova Letter (stating that three months' worth of "late charges incurred and paid [by Bochenski] have been waived and applied to the principal balance and a correction has been made to the credit reporting agencies to remove any delinquency marks reported regarding the late payments."); ECF 2-6, Carpenter Letter (addressing plaintiff's claim that he did not receive prior escrow statements, and enclosing copies of the previously requested documents); ECF 2-2, Second Kucinski Letter (writing to follow up on two previous conversations with plaintiff, explaining the PMI cancelation, and enclosing previously requested documents).

Plaintiff's claim of negligence will be dismissed, with prejudice.

## I.   Request for "Clear Title"

As best as I can determine, plaintiff's suit contains two references to a request for "clear title" to the Property.  *See* ECF 2 ¶ 68; *id.*, Prayer ¶ 1.  Specifically, plaintiff states that "he shall receive clear title on the property known as 1196 Tyler Ave Annapolis Maryland … as remedy to stop this continued and future harassment by M&T Bank."  He refers to his request as a "remedy" for the Bank's misconduct.  To the extent plaintiff seeks to quiet title to his Property, the Complaint is devoid of any basis for a claim to quiet title.

An action to quiet title is designed to protect the owner of legal title "from being disturbed in his possession and from being harassed by suits in regard to his title by persons setting up unjust and illegal pretensions …."  *Wathen v. Brown* , 48 Md. App. 655, 658, 429

A.2d 292, 294 (1981).   Md. Code (2010 Repl. Vol.), § 14–108 of the Real Property Article

("R.P.") sets forth the conditions necessary for maintaining an action to quiet title:

> Any person in actual peaceable possession of property … either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim.

Plaintiff's Complaint fails to set forth any allegations for an action to quiet title.   And,

because this case is clearly not a quiet title action, I shall grant the Motion, without prejudice,

and without leave to amend in this case.   If plaintiff wishes to pursue such a claim, he may do so

in a separate action.   To the extent that plaintiff has made a request for the remedy of "clear

title," the request will be denied.

## J.   Accounting

As noted, plaintiff alleges that M&T has failed, despite repeated requests, to provide him

with a "proper accounting" of his Loan obligation.   *See*, *e.g.*, ECF 2 ¶¶ 12, 16, 17, 20, 26, 46, 51,

56, 59, 61.   It appears that plaintiff seeks to state an equitable claim for an accounting as to his

mortgage Loan account.

"In Maryland, a claim for an accounting is available when 'one party is under [an]

obligation to pay money to another based on facts and records that are known and kept

exclusively by the party to whom the obligation is owed, or where there is a [confidential or]

fiduciary relationship between the parties ….'"   *Polek v. J.P. Morgan Chase Bank, N.A.*, 424

Md. 333, 465, 36 A.3d 399, 418 (2012) (quoting *P.V. Props., Inc. v. Rock Creek Village Assocs.*

*Ltd. P'ship*, 77 Md. App. 77, 89, 549 A.2d 403, 409 (1988)) (alteration to restore accurate

quotation of *P.V. Properties*); s*ee also Ahmad v. Eastpines Terrace Apts., Inc.*, 200 Md. App. 362, 378, 28 A.3d 1, 10, *cert. denied*, 424 Md. 55, 33 A.3d 982 (2011).  "Because the relief sought in an accounting claim is access to information, discovery is the remedy given to plaintiffs who prove they are entitled to an accounting."  *Golub ex rel. Golub v. Cohen*, 138 Md. App. 508, 523, 772 A.2d 880, 889 (2001).  When a plaintiff properly pleads another cause of action that will entitle the plaintiff to discovery, the remedy of accounting is generally superfluous.

*P.V. Properties*, 77 Md. App. 77, 549 A.2d 403, provides an example under Maryland law of when a freestanding claim for accounting is appropriate.  In that case, a commercial tenant in a shopping center sought "an itemized listing of common area maintenance expenses where the lease [was] silent in that respect and the landlord [was] unwilling to provide the desired information."  *Id*. at 80, 549 A.2d at 404.  The Maryland Court of Special Appeals explained the "general rule" that "a suit in equity for an accounting may be maintained when the remedies at law are inadequate" and said: "An accounting may be had … where there is a confidential or fiduciary relation between the parties, and a duty rests upon the defendant to render an account."  *Id*. at 89, 549 A.2d at 409 (citing, *inter alia*, *Nagel v. Todd*, 185 Md. 512, 45 A.2d 326 (1946)).

According to the *P.V. Properties Court*, there was a "limited fiduciary relationship" between the landlord and tenant, because the landlord "maintain[ed] and exclusively control[led] the records which document its expenses," and the tenant was "forced to rely on the good faith and fair dealing of the landlord in assessing the charges."  77 Md. App. at 91, 549 A.2d 403, 549 A.2d at 410.  In that circumstance, the court rejected the landlord's assertion that the tenant had an adequate remedy at law, stating, *id*. at 91–92, 549 A.2d at 410:

> [Landlord] assert[s] that [tenant] could sue ... for breach of contract and then through the civil discovery procedures obtain from [landlord] an itemized

accounting. This suggestion is ludicrous, and certainly not one that leads to an adequate remedy at law. What [landlord is] suggesting is a reversal of proper litigation procedures. Generally, a claimant has a cause of action against a defendant that the parties have not been able to resolve, and therefore the claimant files suit. In its proposed scenario, [landlord] recommends that [tenant] first institute legal proceedings and then determine through discovery whether or not it has a cause of action. This course of action is a waste of both the court's and the litigants' time and expense. In addition, should [tenant] refuse to tender payment, [it runs] the risk of being sued for breach of contract and further, run[s] the risk of being evicted from the shopping center. This can hardly be considered an adequate remedy at law.

In contrast, accounting claims have been rejected where the "plaintiff was fully capable of ascertaining, through its own efforts, the information it sought from the defendant by way of an accounting," *Alternatives Unlimited*, 155 Md. App. at 510, 843 A.2d at 307, where "discovery was otherwise available," *id*. at 511, 843 A.2d at 308 (citing cases), or where "there was no basis for inferring that [defendant] was in any sort of confidential relationship with or bore any fiduciary duty toward [plaintiff]." *Id*. at 508, 843 A.2d at 306.

Here, although there is no indication that M&T had a confidential or fiduciary relationship with plaintiff, M&T is responsible for servicing plaintiff's Loan.  ECF 2 ¶ 4. Moreover, plaintiff's Complaint alleges that, despite his own repeated efforts, he was unable to obtain from the Bank a "proper accounting" of his Loan obligation.  *See*, *e.g.*, *id.* ¶ 46 ("M&T has never sent a correct escrow statement or an accounting for the account 004000093 during their time as the MSP."); *id.* ¶ 20 ("Michael Bochenski to this point has dealt with more than 20 employees of M&T and had to explain to each one of them he needed a full accounting of account 0040000093."); *id.* ¶ 51 ("All M&T employees in all communications were demanded generate proper accounting … of all payments from 1987 to current date ….  This information has not been provided, as of this date.").  Although the Terranova Letter states that a copy of plaintiff's Loan History was enclosed, *see* ECF 2-3 at 2, plaintiff maintains that the document is

"incomplete" because "[t]he years from 1987 through 1997 and year 2012 to current date are missing." ECF 2 ¶ 14; *see also* ECF 2-12, Loan History.

Notably, defendant fails to address these accusations, either in its Motion or its Reply. Moreover, I must construe the facts in the light most favorable to plaintiff. Mr. Bochenski's allegations are sufficient to state an equitable claim for an accounting. Accordingly, I will deny the Motion as to this claim.

### IV. Conclusion

For the foregoing reasons, I will GRANT M&T's Motion (ECF 9) and DISMISS, WITH PREJUDICE, plaintiff's claims of fraud; civil conspiracy; harassment; breach of ethical conduct; accord and satisfaction; intentional infliction of emotional distress; theft; and negligence. Plaintiff's request for the remedy of "clear title" will be DENIED. And, to the extent plaintiff seeks to quiet title, the Motion is GRANTED, WITHOUT PREJDUICE, but without leave to amend in this case. And, I shall DENY M&T's Motion as to plaintiff's request for an accounting.

Accordingly, defendant's alternative motion for a more definite statement (ECF 9), as well as plaintiff's "Motion to Strike Defendants [sic] Motion to Dismiss and Amend Complaint to Claim and Hearing for Judgment and Stay Order" (ECF 19) and "Motion to Strike Defendants [sic] Motion to Dismiss and Amend Complaint to Claim and Hearing for Judgment and Stay Order or Motion to Dismiss in Circuit Court" (ECF 20) will be DENIED as moot.

A separate Order follows, consistent with this Memorandum Opinion.


Date: March 10, 2015                                   /s/
                                        Ellen Lipton Hollander
                                        United States District Judge